# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# LYNCHBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) Criminal Action No. 6:11cr002 |
| v. | ) |
| | ) By: Hon. Michael F. Urbanski |
| SHAUN LAMAR FISHER | ) United States Magistrate Judge |
| | ) |

## REPORT AND RECOMMENDATION

In accordance with the provisions of 28 U.S.C. § 636(b)(3) and upon the defendant's consent, this case was referred to the undersigned to conduct a plea hearing.

Defendant Shaun Lamar Fisher ("Fisher") was charged in a Criminal Complaint on January 12, 2011. This Complaint was dismissed in favor of an Information, which was handed down on February 3, 2011. The Information contains one count, charging that from on or about July 1, 2010, to on or about August 19, 2010, Fisher, being required to register under the Sex Offender Registration and Notification Act ("the Act") and having traveled in interstate or foreign commerce, knowingly failed to update a registration as required by the Act, in violation of 18 U.S.C. § 2250. Fisher executed a Waiver of Indictment, consenting to prosecution by Information. Fisher also waived his right to hold a Rule 11 hearing before a United States District Judge and consented to appearing for such a hearing before a United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(3). A plea hearing was conducted before the undersigned on February 3, 2011.

At the hearing, Fisher, accompanied by his counsel, Randy V. Cargill, entered a plea of guilty to Count One of the Information. Fisher stated that he was fully aware of the nature of the charges against him, the elements of the offense, and the consequences of pleading guilty to

Count One of the Information. Fisher acknowledged that he had signed a written Plea Agreement reflecting his guilty plea, identified the Plea Agreement at the hearing, and stated that he agreed to all of its terms. For the reasons outlined below, the undersigned **RECOMMENDS** that the district court accept Fisher's guilty plea.

**I**

At the plea hearing, the defendant was placed under oath and testified that his name is Shaun Lamar Fisher. Fisher was plainly able to understand and communicate with the court and his counsel, and he testified that he could read and write in English. At all times, Fisher appropriately responded to inquiries from the court and exhibited a full understanding of the proceedings and the instructions given to him by counsel and the court. Fisher stated that he did not suffer from any condition that impeded or prevented his ability to understand the words that were being spoken or the proceedings in general. The undersigned advised Fisher that if at any time he failed to understand, he could stop the proceedings and seek clarification. The court also advised Fisher that he could speak to his attorney at any time.

Fisher stated that he has not been diagnosed or treated for any mental or emotional problem that might impair his judgment, interfere with his thinking, or make it difficult for him to understand the proceedings. Fisher further testified that he was not under the influence of any drugs, alcohol, medication or other substance that might affect his ability to understand the nature of the proceedings being held, the nature of the charges against him or the consequences of pleading guilty to those charges. Fisher's counsel, Randy V. Cargill, expressed his opinion that Fisher was capable of entering a knowing, voluntary and intelligent plea.

Fisher stated that he had received a copy of the Information pending against him and that he had discussed the Information and the case with his counsel. Fisher testified that he

understood what the Information charges, that the violation charged is a felony, and that by pleading guilty, he acknowledges that he did what the Information charges. On the day of the hearing, Fisher signed a Waiver of Indictment, consenting to prosecution by Information. The court explained to Fisher on the record at the hearing his right to have this matter presented to a grand jury. Fisher stated he understood this right and wished to proceed by Information.

Fisher acknowledged that he entered into a written Plea Agreement with the United States, which sets forth certain expectations with respect to a plea of guilty. Fisher testified that he read the Plea Agreement in its entirety, discussed it with his counsel before signing it, and understood its terms. Fisher stated that the written Plea Agreement presented to the court bears his signature and his initials on every page, and that it sets forth his agreement with the government in its entirety.

At the hearing, counsel for the United States explained the following essential terms of the Plea Agreement: (1) Fisher agrees to plead guilty to Count One of the Information, which charges that he is a person required to register under the Sex Offender Registration and Notification Act, and having traveled in interstate or foreign commerce, did knowingly fail to update a registration as required by the Act, in violation of 18 U.S.C. § 2250; (2) this charge carries a maximum statutory penalty of ten (10) years imprisonment, a $250,000 fine, plus a term of supervised release; (3) the parties agree under the sentencing guidelines that a base offense level of 16 applies to his conduct; (4) the government agrees to recommend a sentence at the lower end of the applicable sentencing guidelines range; (5) Fisher agrees not to seek a sentence outside of the applicable sentencing guidelines range; (6) Fisher is advised pursuant to Megan's Law and the Adam Walsh Act Notice that under the Sex Offender Registration and Notification Act, he must register and keep the registration current in each of the following jurisdictions: the

3

location of his residence, the location of his employment, the location of his school; and (7) Fisher agrees to the following special conditions of supervised release:

- He shall have no contact with any child under the age of 18 without the presence of an adult or prior approval of the probation officer;
- He shall immediately report any unauthorized contact with any child under 18 to the probation officer;
- He shall allow the probation officer, or a designee, to conduct random inspections, including retrieval and copying of data from any devices that he possesses;
- He shall allow the temporary removal of computers or other devices for more thorough inspection;
- He shall not possess or use any data encryption technique or program;
- He shall purchase and use hardware and software systems that monitor his computer usage, if so directed by his probation officer;
- He shall not reside or loiter within 1,000 feet of places where children under the age of 18 are located – specifically, primary and secondary schools, schoolyards, parks, playgrounds, shopping malls, daycare centers, and other areas;
- He shall not possess or manufacture any sexually stimulating, sexually explicit, or sexually oriented materials;
- He shall not enter or be present at any establishment involved in the sex industry;
- He shall not use any sex-related adult telephone number;
- He shall provide all of his telephone records to monitor compliance, at the direction of his supervising probation officer;

- He shall register as a sex offender according to federal law, and the laws of each state in which he resides, is employed, or is attending school;
- He shall provide verification of compliance with all registration requirements to his probation officer;
- He shall complete a sex offender evaluation;
- He shall participate in and successfully complete an approved state-certified sex offender treatment program, and fully comply with the lifestyle restrictions and treatment requirements of that program.

Fisher stated he understood these essential terms of the Plea Agreement.

Fisher stated he understood as well that the Plea Agreement included a provision waiving his right to file a direct appeal. He also acknowledged his understanding that he was waiving his right to collaterally attack his Plea Agreement by filing a petition for a writ of habeas corpus under 28 U.S.C. § 2255, except on grounds of ineffective assistance of counsel. Fisher acknowledged in the Plea Agreement and stated on the record at the hearing that he was fully satisfied with the advice and representation given to him by his counsel in this case.

Fisher stated he agreed to the terms of the Plea Agreement and wanted the court to accept it. Fisher further acknowledged his understanding that the presiding court is not required to accept the Plea Agreement and may defer acceptance of the Plea Agreement, including any recommendation for sentencing, until after a presentence report is prepared and reviewed.

Fisher stated he understood that he had a right to plead not guilty and to require the government to prove its case beyond a reasonable doubt at trial. Fisher testified that he was pleading guilty of his own free will and had not been forced, threatened, or coerced in any respect. Fisher stated that no assurances or promises had been made to him by anyone in an

5

effort to induce his plea in this case, except to the extent set forth in the written Plea Agreement filed with the court.

Counsel for the United States informed Fisher of the maximum possible penalty provided by law for the offense with which he is charged, and he said he understood the penalties and consequences of the plea. Specifically, Fisher was informed that he was subject to a maximum term of imprisonment of ten (10) years, a fine of up to $250,000, a $100 special assessment, and a term of supervised release following any term of imprisonment. Fisher acknowledged his understanding that the court could also order restitution if it deems it to be appropriate.

Fisher stated he understood that the sentence in this case is covered by the federal sentencing guidelines, which are advisory but provide the court with a guide for fashioning a sentence within a prescribed range. Fisher said that he and his counsel discussed how the sentencing guidelines might apply in his case, and he acknowledged that the Plea Agreement contains an agreement with the United States as to the applicable base offense level. Fisher further stated he understood that pursuant to the Plea Agreement, the United States agreed to recommend a sentence at the low end of the guidelines, and Fisher agreed not to seek a sentence outside of the applicable guideline range. Fisher said he understood that the court would not be able to determine the recommended guideline sentence for his case until after a presentence report has been completed. Fisher stated he understood that the eventual sentence imposed may be different from any estimate his attorney has given him, and that the court has the authority, in some circumstances, to depart from the advisory guidelines and impose a sentence that is more severe or less severe than the sentence called for by the advisory guidelines. Fisher acknowledged his understanding that the court is not bound by any recommendations set forth in the Plea Agreement, and may sentence him up to the statutory maximum. Fisher stated he

understood that in that event he would not be able to withdraw his guilty plea and would be bound by the sentence the court imposes. Fisher stated he understood that pursuant to the Plea Agreement, he was giving up the right to appeal the court's sentence under the sentencing guidelines.

Fisher acknowledged his understanding that parole has been abolished and, in the event he receives a sentence of incarceration, he will serve his full term of imprisonment less any good time credit earned. Fisher stated he understood that a period of supervised release may be imposed in addition to any term of imprisonment, and that he would be subject to specific terms and conditions of supervised release set forth in the Plea Agreement. Fisher also stated he understood that any term of supervised release could be revoked if he violated the terms and conditions of such release, and in such event, an additional term of imprisonment could be imposed regardless of how long he may have served before the violation. Fisher was advised that if resentenced following a supervised release violation, he may serve a combined total period of incarceration greater than the maximum term he had been told he could receive.

Fisher also testified that he understood that he would be giving up the following valuable constitutional rights on a plea of guilty:

1. The right to a speedy and public trial;
2. The right to have his case tried and decided by a jury of 12 unbiased members of the community;
3. The right to assistance of counsel at trial;
4. The right to require the United States to prove guilt beyond a reasonable doubt;
5. The right to the presumption of innocence and the fact that he has no burden to present any evidence at trial;

6. The right to remain silent and not have that silence used against him;

7. The right to testify on his own behalf and to confront and cross-examine adverse witnesses;

8. The right to use the subpoena power of the court to compel testimony and evidence favorable to him;

9. The right to appeal any adverse verdict; and

10. The right to counsel on appeal.

Fisher said he understood that if he pleads guilty, he would be giving up these rights, there would be no trial, and the only thing left to be determined is whether to accept his plea of guilty and if it is accepted, to sentence him at a later date.

Fisher stated he understood that the offense with which he is charged is a felony, and that, if his plea is accepted, he will be adjudged guilty of a felony offense by the presiding court. Fisher further acknowledged his understanding that this adjudication may deprive him of valuable civil rights, such as the right to vote, hold public office, and possess a firearm.

The government proffered, without objection, the following evidence regarding the offenses with which Fisher is charged:

In 1995, Fisher was convicted of indecent liberties by forcible compulsion in the state of Washington. As a result, he was committed to juvenile rehabilitation for 52 weeks. Fisher was ordered to register as a sex offender. On August 12, 2009, Fisher signed a Department of State Police Sex Offender and Crimes Against Minors Registration Form, acknowledging that he understood the Disclosure of his Duty to Re-Register in the Sex Offender and Crimes Against Minors Registry upon coming to Virginia. Fisher was required to verify his residence every

ninety days in the Commonwealth of Virginia, and he continually re-registered until July 1, 2010.

On June 8, 2010, the Virginia State Police mailed the re-registration form to Fisher's address of record in Lynchburg, Virginia. The form was not returned by the deadline on July 1, 2010. On July 13, 2010, a Virginia State Police Officer responded to Fisher's address and spoke with his roommate, James Swift. Swift informed the police officer that Fisher moved to Pennsylvania two weeks prior to live with his sister. An arrest warrant for Fisher was obtained.

On August 16, 2005, the officer made contact with a lieutenant of the North Huntington Township Police Department in Pennsylvania. This lieutenant noticed a vehicle with a Virginia license plate in a Wendy's parking lot at 3:00 a.m. After running the license plate, he determined it was registered to Fisher and that Fisher was wanted in Virginia. The lieutenant's wife was employed at Wendy's, and she confirmed that Fisher was living in Pennsylvania and working at Wendy's.

Fisher was arrested on August 19, 2010 and extradited to Virginia on September 2, 2010. He was advised of and waived his Miranda rights. Fisher stated that he left Virginia a month and a half prior to the interview because he lost his job and did not have the money to pay rent. Fisher stated he went into survival mode and traveled to Pennsylvania because he had family there. Fisher admitted to working at Wendy's. He stated he did not even think about the registry. Records obtained from Wendy's showed that he was employed there and that his address of record was in Pennsylvania.

Brittany Fisher, the defendant's sister, was interviewed, and she stated that her brother arrived in Pennsylvania on either June 19 or June 20, 2010. She stated he began living with her in Irwin, Pennsylvania, and that he lived with her at that address until his arrest. Brittany Fisher

9

stated she was aware of Fisher's requirement to register as a sex offender, and she said that her brother was aware of the requirement as well.  Brittany Fisher explained that Fisher referenced his requirement to register when he first moved to Pennsylvania, but stated he was reluctant to register, because her apartment complex was located near a school.

Gail Fisher, the defendant's mother, was interviewed and confirmed that Fisher was reluctant to register because Brittany Fisher's apartment was located in close proximity to a school.

After Fisher left Virginia, he failed to update his registration in the Commonwealth of Virginia to indicate that he had moved to Pennsylvania.  Furthermore, Fisher never informed the Commonwealth of Pennsylvania of his move.  These events occurred within the Western District of Virginia and elsewhere.

At the hearing, Fisher stated he did not dispute these facts.  He said he was pleading guilty because he was, in fact, guilty of Count One as charged.  Specifically, Fisher explained that after he lost his job, he had nowhere to live in Virginia, and he went to live with his sister in Pennsylvania.  He stated he knew he had an obligation to register as a sex offender but could not register because his sister's apartment complex was too close to a school.  He said they were planning on moving from that apartment complex so that he could register.  Fisher testified that he was not trying to avoid registration, but he felt he had no choice, given the location of his residence in Pennsylvania.  He stated that even though it was not his intent to avoid registration, he knows he violated the law by not registering in a timely fashion and is guilty of the offense charged.

Before he was formally called upon to enter a plea, Fisher was given an opportunity to ask the court any questions.  Fisher asked for clarification as regards the term of imprisonment

that could be imposed if he violates a condition of supervised release. The undersigned explained fully that if Fisher were to violate any of the rigorous terms and conditions of supervised release, the court could sentence him to an additional period of incarceration regardless of how long he may have served before the violation. Fisher stated he understood the consequence of violating a condition of supervised release.

Having all of this explained to him, Fisher entered a plea of guilty to Count One of the Information. Fisher's counsel stated he believed that his client's plea of guilty was well-advised and consistent with the facts of the case.

The undersigned advised Fisher that he has a right to appear before a United States District Judge for this Rule 11 hearing. Fisher said he understood, and that he consents to conducting the hearing before the undersigned. The undersigned explained that his findings of fact and recommendations would be set forth in writing, and Fisher would have fourteen (14) days to file any objections. Fisher stated he understood.

## II

Based on the evidence presented at the plea hearing, the undersigned now submits the following formal findings of fact, conclusions and recommendations.

1. Fisher is fully competent and capable of entering an informed plea;

2. Fisher is aware of the nature of the charges and the consequences of his plea;

3. Fisher knowingly and voluntarily entered a plea of guilty to Count One of the Information; and

4. The evidence presents an independent basis in fact containing each of the essential elements of the offense to which Fisher is pleading guilty.

For these reasons, the undersigned **RECOMMENDS** that the presiding district judge accept Shaun Lamar Fisher's plea of guilty to Count One of the Information and adjudge him guilty of the offense charged therein. The United States Probation Service is **DIRECTED** to perform a presentence investigation and prepare a presentence report. Fisher's sentencing has been scheduled for May 10, 2011.

### III

The Clerk is directed to immediately transmit the record in this case to the Honorable Norman K. Moon, Senior United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record.

Entered: March 10, 2011

*/s/ Michael F. Urbanski*
Michael F. Urbanski
United States Magistrate Judge